May it please the Court, Art Patterson and Nathaniel Rose on behalf of U.S. Home Corporation. Our position simply is the trial court should be reversed. There was an occurrence under the policy. There was property damage and or the loss of tangible property as a result of the negligent mixture of stucco products and or the negligent application of those stucco products. Well, there's no question that there was damage, but how do you differentiate this case from a performance bond? In other words, the damage here was faulty workmanship, was it not? It's faulty workmanship, faulty application. The product, when it was in its natural state, before it was combined and applied, was fine. It was the combination of that product and the application that caused the cracks in the spots, soft spots in the walls, which led to the problem that is here before the Court. Well, what you just told me, it was faulty workmanship. It is faulty workmanship. It's negligence. But there is a difference between a performance bond as all of the and the CGL policy, as the recent cases have discussed. There may be some similar overlap, and to the extent there is some similar overlap, that is not a reason to deny coverage. My problem, I'll tell you what my problem is. What I look at here is that there's been an application by a workman, a contractor, and that application was deficient in some way. Correct. Now, under state law, unless the application of that work caused other damage by reason of the faulty workmanship, to me, it's not an accident or occurrence. It's just faulty workmanship. Now, all the recent cases, I'll grant you, advanced roofing takes that position. Advanced roofing really is a your work exclusion, and so it's really inapplicable. But under the... Why is it inapplicable? Here, U.S. Home did not do the work. And under the your work exclusion, there's an exception for work done by subcontractors, and under the policy, the policy is broad enough to cover the work done by subcontractors. That's the holding in your University Mechanical, which is directly on point. Yeah, but advanced roofing was before, is the last spoken word on this. I'm sorry? Advanced roofing is the last spoken word. Advanced roofing, if you'd look, Your Honor, is a decision by the Court of Appeals of the state of Arizona. It's not the last word. It contradicts University Mechanical, which is the Arizona Supreme Court. Well, it interprets it. It doesn't contradict it. Well, it doesn't even address University Mechanical, and I believe it contradicts University Mechanical, which is the decision of the Arizona Supreme Court, and stands for the proposition that the faulty application and installation by itself is covered under the CGL policy. Well, that's not the facts of universal. Universal, there was an application of work, and by reason of that application, other damage occurred by reason of that application. No, Your Honor. They replaced the entire system. There were faulty couplings. There were faulty O-rings, and they replaced the entire system, and they were covered under the CGL policy for all of that damage, including the defective work. And so that is the holding of University Mechanical. Advanced roofing is really a your work exclusion, and it really is inapplicable in the facts here because the Homeowners Association contracted to replace 250 roofs. Advanced roofing replaced 40. They sued to get all of the money back that they paid for all of the construction, and there's no ‑‑ in advanced roofing, there was no allegation of property damage. Well, what it looks like to me is what you're trying to do is to turn a liability policy into a performance bond. Just as simple as that. There are different animals. They do different things. They're protected against different risks. And what you're trying to do is to use one to endure the other. Your Honor, I think if you would look at the recent cases, and particularly the Lennar, Arizona case, it holds that negligent workmanship constitutes an occurrence. Negligent workmanship causing property damage meets the definition of policy. But you presume that in Arizona there's no difference between a liability policy and a performance policy. To me, that's just ‑‑ that avoids looking at the policy. You need to look at the four the extent that there is overlapping coverage or the insurance ‑‑ the ICO has written insurance policies to a point where there is coverage. That's a problem from their writing of the policies as opposed to the real issue of whether there is coverage under the terms of the policy. How could there be overlap between a performance bond and a general liability policy? A performance bond, regardless of fault, guarantees performance. A liability policy requires an accident or an occurrence. How ‑‑ now, you say there could be an overlap. How could there be an overlap between the two concepts? To me, they seem to be mutually exclusive. Well, I don't think they are, Your Honor. If you look at the recent ‑‑ Give me an example of where there would be overlap between a performance and a general liability policy. Well, I mean, in the context here, if they had never completed the work at all and there was a performance bond, the surety would step in to complete the work. Yes. That's the difference. Even if there were no accident, the performance bond would ‑‑ Correct. Yes. Now, I'm asking you to give me an example. Under your theory, so would the liability policy. Let's say they had, instead of having it happen what did happen? No, that's not correct, Your Honor, because if they had never ‑‑ You don't want to let me finish? If they had never done the ‑‑ You don't want to let me finish my question? I'm sorry, excuse me. You don't want to hear what it is? No, yeah, go ahead. You sure? Certainly. I mean, you can talk if you want to. Well, he doesn't. I like to hear. What happens if instead of what happened here, they had just failed to complete some of those and instead of coming, bringing somebody in to demolish and repair, they had actually brought in somebody to finish the last 50, I forget what the number is here, but let's say they just didn't do it all, or let's say they did work on all those, but they forgot to put on the shingles. They put the towel paper on, but didn't put on the shingles. So how would that not be covered by your theory of the liability policy? It would not be covered, because there has been no accident leading to property damage. It's uncompleted work. That's where the performance bond would apply, but the CGL policy would not. Well, explain to me how that is from your theory. Well, they come in, a new contractor comes in. They have to do this. They create other damage. They have to get on the roof. They cause the car to bring the shingles in. They run over the grass. They break pipes. These are all those things that contractors always do when they do the work after the final improvements have been completed. Usually you do the roof work before they put in all that stuff. And so they now have to put on the shingles, and sure enough, they come in and they cause all this damage as part of doing the work. Why would that be under your theory? Why would that be covered? Well, again, the answer to your question, the difference between the performance bond and the CGL coverage, I think, is adequately explained by, among others, the Texas Supreme Court in Lamar and the Texas Court of Appeal decision in Lamar. Did you hear my question? I'm sorry? Did you hear my question? I did. Okay. Why don't you answer that question, and then you can answer the other question. Okay. I'm running short on time. On my 10 minutes, I would like to reserve some. I can attempt to – well, there's been no – the work has not been completed. I don't want to answer the question. I'm trying to answer it. That's okay, too. If you'd rather talk about other stuff, it's your time. But if I could – I'd like to reserve a minute, if I may. But the short answer is when they haven't completed the work, that's where the performance bond applies. But the CGL policy does not. What's the difference in your book between not completing the work and completing the work badly? I mean, from the perspective of the homeowner or from the perspective of the guy who comes in and has to do the – finish the work, there's really no difference between a job poorly done and a job incompleted. Very often, jobs are poorly done because they're not fully completed. They forget – you know, they put stuff in, and some of the shingles are missing, and so the rain comes in. You could classify that as a bad job, or you could classify that as a forgetting to finish the job. How are those two things different in your book? Well, if it's never completed, and it's faulty, and the general contractor doesn't do it, you're right. Well, from your perspective, if the contractor you hire doesn't do the job right, then it's not completed. You hire somebody to do a roof that works. If they don't leave the premises and you still have something where – I guess they – you know, the rain comes in when the – when the rains come, then you can say, well, you didn't finish your job. I'm still getting rain in my house. The difference, if you will, Your Honor, is where they have not done the work and there's a performance bond up, you turn to the surety, and or the general contractor completes the work. So – but the difference is, in my opinion, is adequately explained in both the Let me ask you about something else. You know about our rules about not signing unpublished dispositions prior to 2007? Yes, Your Honor. We – You violated that willfully? We apologize for that. Did you violate that willfully? No. Were you aware of the rule when you wrote your brief? No. You were not aware of it? Well, I – I don't recall it at the time when I signed the brief. And I apologize to the Court and counsel. Did you file an amended brief without the violation? Did we file an amended one? Yes. No, we did not. Don't you think it's your responsibility to do that if you, in fact, didn't know? Yes. You will do that? Yes. And you will study our rules carefully? Yes, Your Honor. In the future? Yes? Yes. I'm very surprised that a firm of your size, you didn't have anybody familiar with our rules. In any event, we'll hear from the other side. May I have a minute for rebuttal? Yes. I'll think about it. Okay. Thank you. May it please the Court, Joshua Rogers on behalf of Appellee's Maryland Casualty Company. I don't want to waste the Court's time going back through advanced roofing versus university mechanical contractors. Well, you won't waste my time if you answer me this question. If we decide advanced roofing controls, do we need to reach the issue with respect to your work exception? No, Your Honor. You do not. Okay. I believe the advanced roofing case is clear that you have to start with the issue of does this fall within the insuring agreement, i.e., is this property damage caused by an occurrence under the policy? If we say advanced controls, we don't have to reach that? We never get to the exclusions in that case, Your Honor. Okay. Thank you. And, in fact, appellants cite to a case out of Arizona, a more recent case, Lenar Corporation, which also happens to be the parent company of U.S. Home, but Lenar Corporation versus Auto Owners Insurance Company. That was a case from the Court of Appeals issued this year in which they, in fact, expressly confirmed the ruling in advanced roofing which says that faulty workmanship in and of itself doesn't constitute an occurrence and property damage and the cost to repair faulty workmanship does not constitute property damage. Well, is advanced roofing and universal mechanic, are they in direct conflict? They do not conflict, Your Honor. If no, why not? The reasons they do not conflict is because, first of all, the universal mechanical case was a case of a manufacturer of a product, and that manufacturer was not a workman, did not install this. It had no, there was no relationship to faulty workmanship. That issue was not even addressed. In fact, they didn't even analyze the issue of whether there was an occurrence in that case. They simply were looking at the issue of, they appeared to assume it and just went on to, well, when does it have to take place in terms of the policy? Give us an example of an action by a subcontractor that would fall within this definition. Precisely what advanced roofing and now the Lenar Home. I didn't ask for an explanation of the cases. I asked you to give us a factual example of an action by a subcontractor that would fall within the meaning of property damage in this policy. Okay, Your Honor. Specifically, like in this case, if you have stucco that cracks, and that cracking is significant enough that it allows water to seep in through that cracking and damages the framing and or drywall, et cetera, that would be resulting damages from the condition, which is the defective work. The resulting damage to other work is the framing and or drywall. And how is that different from what happened here? In this case, Your Honor, it's simply the defective work. Nothing else was damaged. Nothing else was injured by exposure to the defective stucco. The stucco is defective. If you take away the cracks and the soft spots in the stucco, it's just stucco. It's not defective. So the insured has to wait for damage to occur? No, Your Honor. The insured doesn't have to wait for damage to occur. They have the responsibility to stand behind their work. This is what warranties are for. And they will fix their defective work. That's also what performance bonds are for, to complete the work that they should have done in accordance with what they should have done under the contract. I take it you agree that this is not a case where the insured simply looked at the stucco finish and said, you know, I don't like the sheen. I don't like the way you did the corners. I don't like the fact that some part of the brick seam shows over here. It's not that. It's not just that they said we think these guys didn't do as good a job as the folks we had doing it last week. Not simply that, Your Honor, no. I mean, it does involve we don't like all of this crap. So if somebody applies stucco in an improvident, unworkmanlike way, and it actually causes damage that day or the next day, it's covered? Yes, Your Honor. But if the person applying the stucco does the same defective work, but there's no immediate damage, but the entity responsible for the overall quality says, if I leave it that way, there will be damage. It might be tomorrow. It might be next week. That's not covered. That's correct, Your Honor. Again, there's a difference between what a liability insurance policy does and what ---- Just to clarify your answer to Judge Hawkins' question, when you say covered, what would be covered in that instance? Let's say the stucco is poor so that it allows rain to come through. Okay? You then get damage to the drywall, let's say. In your view, replacing the drywall would be covered? It would fall within the insuring agreement. That's correct, Your Honor. What about repairing the hole, the stucco? The stucco itself would not be covered. Again, that would simply be the repair and replacement of the defective work itself. I think it was last year, wasn't it, in Arizona we went 120 days without rain? That's correct, Your Honor. And that's not that unusual, is it? No, it's not. So if the defective work leaves a wall vulnerable to water penetration, then the insured has to wait however long it takes for the clouds to build up in January or August in rain, huh? No, that's not correct, Your Honor. Again, their responsibility is to repair their work. And in that case, in either scenario, whether they do it right away or they wait until there's damage to something else, they're going to be responsible for that repair and replacement of that defective work. So the question they have to ask is one of a business question, whether they want to repair the work now or repair it later, and then they'll have coverage for additional damage that's done, but they still won't have coverage for that defective work itself. You think this is a question that we should refer to the Arizona Supreme Court? I don't think it's necessary, Your Honor. I think we have the authority that's presidential in Arizona from the Court of Appeals. The recent Lenar v. Auto Owners case from the Court of Appeals, they petitioned review on that to the Supreme Court of Arizona, and the Supreme Court of Arizona denied review on that. I don't believe it's necessary. I believe the Supreme Court thinks the issue's resolved, and I think that this Court can rule accordingly. You left in your briefcase your best argument on the question you were just asked. What was that, Your Honor? Who the judge was. District Judge Martone sat on the Arizona Supreme Court. That is correct, Your Honor. He was actually the one of the at one point he was the chief justice, was he not? I don't know if he was ever. No, I don't think he was ever chief justice, but he was on the Supreme Court. Yes, he was on the Supreme Court. For about five or six years. That's correct. Happily back as a trial judge now. That's correct, Your Honor. Okay, thank you. Thank you. You left a minute and a half on the table. We'll give it to your opponent. I think it was a minute and a half. Thank you, Your Honor. Again, we believe University Mechanical covers the scenario here. It covered all the defective work. The work in question was not the work of U.S. Home. When the work was performed, it was defective from the get-go, and it would be absurd to require that we wait until water intrudes into the property before something is done. The defective stucco, the cracks. But you do understand the distinction. It's a perfectly plausible distinction. It says if you don't, you may disagree with it, but the distinction your opponent has drawn is perfectly plausible. He says you never get coverage for the hole. If you leave the hole there long enough and water comes through it, you may have coverage for the damage that the water causes as it goes through the hole. But no matter what, you can wait all along. You can wait until no one comes back. You're not going to have coverage for leaving the hole in the roof. That's a perfectly plausible distinction, isn't it? No, I understand his position, and that's what advanced roofing says. What I'm suggesting, Your Honor, is that University of Mechanical holds to the contrary because it covered the entire cost of fixing everything, not water damage to a roof. It covered the entire cost of replacing the entire system, including the defective work. Limbach out of the Fourth Circuit, same for construing Pennsylvania law. And the Lenar, Texas case in footnote 29 suggests the same thing. There the problem was they spec'd an EFA system that was inherently defective, and they suggest that if there was a problem with the installation as opposed to what was spec'd, there could be coverage for the installation. Thank you. Thank you, Your Honor. I look for that corrected brief. I'll grant leave for it to be filed. You will not, of course, charge your client for the time or expense of preparing it. No. Again, I apologize to the Court and counsel. You understand that? I do. Okay. The case is argued. We'll stand submitted.
judges: Kozinski, Hawkins, Cowen